IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LYNN SCHALLER, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-658 |
| ) | |
| GENERAL DYNAMICS ) | |
| CORPORATION, et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff in this action asserts four claims: three ERISA[1] claims against defendants Aetna Life Insurance Company ("Aetna"), General Dynamics C4 Systems, Inc. ("GDC4S"), and General Dynamics Corporation ("General Dynamics"), and one state law contract claim against GDC4S for reimbursement of relocation benefits. At issue on a threshold motion to dismiss the state claim are two questions:

> (i) whether the state contract claim and the ERISA interference claim arise from a common nucleus of operative fact such that the state claim may proceed pursuant to supplemental jurisdiction, 28 U.S.C. § 1367, and

> (ii) whether the state contract claim is barred by plaintiff's failure to exhaust GDC4S's dispute resolution procedure.

For the reasons that follow, the motion to dismiss must be denied. First, the ERISA and state claims share a common nucleus of operative fact, and hence supplemental jurisdiction is appropriate. Second, exhaustion of GDC4S's dispute resolution procedure appears, at this time, to be futile, and dismissal on this ground is therefore not warranted.

---

[1] Employee Retirement Income Security Act § 502, 29 U.S.C. § 1132.

1

## I.

Plaintiff Lynn Schaller, a citizen of Virginia, was an employee of defendant GDC4S at all times relevant to her claims. She alleges GDC4S is a company incorporated in Virginia and a "subdivision" of General Dynamics, a company also allegedly incorporated in Virginia. Defendant alleges Aetna, a Connecticut corporation, is the "underwriter" for General Dynamics's Long-Term Disability plan ("LTD plan"),[2] that General Dynamics is the administrator for the LTD plan under ERISA, and that both General Dynamics and GDC4S are plan sponsors under ERISA. She further claims Aetna, General Dynamics, and GDC4S are all "fiduciaries" of the plan as defined by ERISA.[3]

Plaintiff's employment with GDC4S began in November 2004, at which point she became a participant in General Dynamics's LTD plan. In February 2010, plaintiff, who was then working in Arizona, was promoted to Senior Contracts Manager and selected to participate in GDC4S's incentive compensation program/bonus retention plan. During that year, plaintiff accepted GDC4S's request that she transfer for two years from Scottsdale, Arizona to Fairfax, Virginia. Under GDC4S's Platinum Relocation Policy ("the Relocation Policy") then in effect, plaintiff was entitled to receive reimbursement for costs associated with selling her home in Arizona and purchasing a new home in Virginia, as well as reimbursement for other expenses incurred in the relocation. The Relocation Policy further provided that plaintiff would be required to return all relocation reimbursements in the event she voluntarily terminated her

---

[2] Although the current record does not clearly establish the citizenship, including principal place of business, of each defendant, no party contends there is diversity of citizenship, and thus the analysis here proceeds on that premise.

[3] ERISA § 3(21)(A) (stating that a fiduciary "exercises any discretionary authority…respecting management of such plan," "renders investment advice…with respect to…property of such plan," or "has any discretionary authority…in the administration of such plan.").

2

employment with the company or was terminated for cause prior to the end of the two-year period. Pursuant to the Relocation Policy, plaintiff relocated to Virginia in August 2010.

In February 2007, plaintiff alleges she began to receive treatment for a severe skin condition by several physicians and ultimately by physicians at the Mayo Clinic. She further alleges that in November 2009, GDC4S and General Dynamics became aware of her skin condition and provided plaintiff with the accommodations she requested. After her transfer to Virginia, plaintiff alleges her skin condition worsened and a last resort treatment her physician administered to her was beginning to fail. She states she informed her manager at GDC4S that if her condition continued to worsen, she would take Family and Medical Leave Act[4] ("FMLA") leave from October 2010 to January 2011. According to plaintiff, her condition continued to deteriorate and, as a result, she took FMLA leave, returning to work in January 2011. Thereafter, in June 2011, she requested vacation time/Personal Time Off ("PTO").

On June 8, 2011, while at home on PTO, plaintiff alleges she was contacted by GDC4S Human Resources personnel and terminated for "lack of work." Consistent with the termination notice, defendants sent her severance package paperwork on June 9, 2011, which included a provision for a $25,000 "Relocation Allowance." Plaintiff chose not to sign or return this paperwork. Thereafter, plaintiff applied for Social Security disability benefits, which were awarded in December 2011. Plaintiff allegedly requested LTD plan documents from GDC4S on February 2, 2012, and again requested documents from General Dynamics on March 2, 2012; both requests, she claims, went unanswered. She ultimately applied for LTD plan benefits using claim forms received from Aetna.

---

[4] 28 U.S.C. § 2601.

Plaintiff alleges that defendant Aetna then denied her claim for LTD plan benefits on June 12, 2012, on the stated ground that she was not covered by the LTD plan because her employment ended before the disabling event. Plaintiff claims Aetna improperly denied her benefits because she was permanently and totally disabled on June 8, 2011, while she was still employed by GDC4S, and the first day on which she was no longer an employee was June 9, 2011. On August 16, 2012, plaintiff appealed the denial of her LTD plan benefits, but Aetna upheld the denial on November 13, 2012, again on the ground that plaintiff was not totally and permanently disabled on her last day of work.

On June 3, 2013, plaintiff filed this action, alleging the following claims:

Count I: Aetna's improper denial of plaintiff's long-term disability benefits, in violation of ERISA § 502(a)(1)(B);

Count II: GDC4S's unlawful interference with plaintiff's right to receive long-term disability benefits, in violation of ERISA § 502(a)(3), both (i) by discharging her on the same day she was diagnosed as totally disabled in order to prevent her from qualifying for long-term disability benefits, and (ii) by providing Aetna with the incorrect date of her employment termination;

Count III: General Dynamics's failure to provide plaintiff with plan documents, in violation of ERISA § 104(b)(4) and § 502(c)(1); and

Count IV: GDC4S's breach of the Relocation Policy by failing to reimburse plaintiff for all of her expenses incurred in relocating to Virginia.

Based on these allegations, plaintiff seeks (i) an award of benefits under the LTD plan, (ii) back pay, front pay, unpaid bonuses, and compensatory damages for her wrongful termination and defendant GDC4S's interference with her ERISA rights, (iii) penalties under ERISA for failure to provide plan documents, and (iv) damages for breach of the Relocation Policy.

At issue is whether Count IV should be dismissed for lack of subject matter jurisdiction, given (i) defendants' claim that there is no common nucleus of operative fact between the state

claim in Count IV and the federal claim in Count II, and, alternatively, (ii) plaintiff's failure to exhaust GDC4S's Dispute Resolution Policy.

## II.

It has long been true that in non-diversity federal question cases involving both federal and state law claims, the state claims have been allowed to tag along with the federal claims in federal court provided the state claims arise out of the same "common nucleus of operative fact" as the federal claim.[5] Although the Supreme Court has provided no single test for divining whether a "common nucleus of operative fact" exists, the Fourth Circuit made clear as early as 1993 that ascertaining whether the state and federal claims share a common nucleus of operative facts involves an analysis of whether "the two claims' proof will rest on [a] central issue." *White v. County of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993). Thus, in this circuit, the "common nucleus of operative fact" test is not satisfied simply because the same factual circumstances may have given rise to both the federal and state claims; rather, courts in this circuit must dig deeper and determine whether the state and federal claims have an essential element of proof in common. If so, supplemental jurisdiction is appropriate and may be exercised at the discretion of the district court.[6] This test, applied here, points persuasively to the

---

[5] *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) (later codified in 28 U.S.C. § 1367). *Gibbs*, and its subsequent codification in § 1367, arose from the common law doctrine of pendent jurisdiction. Such a doctrine existed as early as 1824, when the Supreme Court found that federal question jurisdiction existed over a case presenting federal questions as well as questions not dependent on federal law. *Osborn v. Bank of the United States*, 6 L.Ed. 204 (1824). The Supreme Court later referred to *Osborn* as the "lineal ancestor" of *Gibbs*. *Aldinger v. Howard*, 427 U.S. 1, 13 (1976).

[6] *See, e.g., Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (stating that "[t]here are no situations wherein a federal court must retain jurisdiction over a state law claim, which would not by itself support jurisdiction").

conclusion that the claims set forth in Counts II and IV have in common an essential element of proof, and therefore involve a common nucleus of operative fact.

Count II of plaintiff's complaint alleges that defendant GDC4S terminated plaintiff specifically to interfere with her long-term disability benefits, in violation of ERISA. Thus, in order to succeed on her claim, plaintiff will have to show (1) that she was entitled to long-term disability benefits under the LTD plan, and (2) that defendant GDC4S terminated her for the purpose of interfering with her right to receive those benefits under ERISA. In other words, if plaintiff can show she was terminated, not for cause, but for the purpose of interfering with her ERISA rights, she will prevail on her ERISA interference claim. On the other hand, if, as defendants claim, plaintiff was terminated for cause, her ERISA interference claim will fail. Thus, whether plaintiff prevails on Count II turns on the reason for her termination.

Like Count II, Count IV also turns, at least in part, on the reason for plaintiff's termination. In order to succeed on Count IV, the state law breach of contract claim, plaintiff must show (1) that there was a contract between GDC4S and plaintiff pursuant to which GDC4S agreed to pay plaintiff relocation expenses for plaintiff's move from Scottsdale to Fairfax, (2) that GDC4S did not pay plaintiff those expenses, and (3) that plaintiff is entitled to those expenses. The Relocation Policy states that either voluntary termination, or involuntary termination for cause, will result in forfeiture of relocation benefits. Thus, if the finder of fact concludes, as GDC4S contends, that plaintiff was terminated for cause, GDC4S will not be obligated to reimburse plaintiff the costs of her relocation. But if plaintiff proves she was terminated without cause, i.e. for the purpose of interfering with her ERISA rights, then GDC4S will be obligated to pay plaintiff her relocation benefits.

In sum, both the ERISA interference claim and the state claim for relocation expenses turn on the reason for plaintiff's termination, and as such, these claims have an element of proof in common. Thus, the two claims arise out of a common nucleus of operative fact, and supplemental jurisdiction is appropriate under 28 U.S.C. § 1367.

This conclusion that supplemental jurisdiction over the state claim exists does not end the analysis inasmuch as the exercise of that jurisdiction is discretionary. The question whether that discretion should be exercised in this case is not difficult given that the failure to do so here would create the risk of inconsistent results. Specifically, because the ERISA interference claim and the state breach of contract claim share a common element, requiring the parties to litigate the claims in separate fora might lead to different, indeed irreconcilable decisions in those fora, a result inimical to the administration of justice. It is also important to note that the contract claim, unlike the ERISA claims, is subject to a jury demand. Although the parties have waived a jury in this case, there is no assurance that they would do so were the contract claim dismissed here and then pursued in state court.

In sum, although a variety of factors merit consideration in the supplemental jurisdiction discretionary calculus,[7] the need to avoid the risk of inconsistent results points convincingly to the need to exercise supplemental jurisdiction over the state contract claim. Also weighing in favor of doing so is the likelihood that the contract claim, together with the ERISA claims, will be resolved more expeditiously and economically here than might occur were the contract claim to be dismissed and then filed and pursued in state court. In short, delay and added expense are

---

[7] *See, e.g., Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (noting that "[a]mong the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy") (citations omitted).

certain results of declining to exercise supplemental jurisdiction over the contract claim. For all these reasons, it is appropriate to exercise supplemental jurisdiction over the contract claim.

### III.

In the alternative, defendants seek dismissal of Count IV on the ground that plaintiff failed to exhaust GDC4S's mandatory formal dispute resolution procedure before filing this action in district court. Specifically, defendants claim that by accepting employment with GDC4S and General Dynamics, plaintiff expressly agreed to abide by the terms of the Dispute Resolution Policy, and thus the action in court for breach of contract is barred until plaintiff exhausts the Dispute Resolution Policy procedure. Defendants support this claim by citing to both the employment application signed by plaintiff and the employment offer letter, which state that application for and acceptance of employment binds the employee to resolve any claim arising out of the employment relationship through the Dispute Resolution Policy.

To begin with, the Dispute Resolution Policy, by its terms, applies only to covered claims—in other words, a plaintiff need not exhaust the dispute resolution procedure if her claim is not covered by the Dispute Resolution Policy. Covered claims are defined in the Dispute Resolution Policy as "employment-related claims between an individual Employee and the Company" involving "the claim of a legal right, obligation, or entitlement regarding or arising from the employment relationship."[8] The Dispute Resolution Policy also provides an apparently exhaustive list of excluded claims, including claims for benefits under a benefit plan, including

---

[8] The record reflects that covered claims include, but are not limited to, those involving (1) involuntary termination that is the result of illegal discrimination or retaliation; (2) employment discrimination and harassment claims; (3) retaliation claims for legally protected activity or whistleblowing; (4) claims related to workplace accommodation due to physical or mental disabilities; (5) claims related to the Family and Medical Leave Act; (6) tort claims; and (7) claims in violation of public policy.

8

ERISA claims.[9] The Dispute Resolution Policy further provides that the Policy Administrator determines whether a claim is covered or excluded. If the Administrator determines a dispute is covered, a complaining employee is required to exhaust Steps One and Two of GDC4S's dispute resolution procedure before bringing a suit in court. In Step One, the employee must file a Notice of Dispute with the Policy Administrator within thirty days after the dispute arises. Human Resources will meet informally with the employee and the supervisor to attempt an informal resolution of the dispute. In Step Two, if the employee is not satisfied with the meeting's results, he or she must file a Request for Management Review Panel within thirty days of the completion of Step One. After the panel makes its final determination, the employee may then pursue either mediation (Step Three) or file a lawsuit in court.

As defendants point out, some courts have held that "failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal," because a party's failure to submit to mediation or arbitration as required by a contract deprives a federal court of subject matter jurisdiction over the action. *Tattoo Art, Inc. v. Tat Intern, LLC*, 711 F.Supp.2d 645, 651 (E.D. Va. 2010) (*citing Brosnan v. Dry Cleaning Station, Inc.*, 2008 WL 2388392 at *2 (N.D. Cal. 2008).[10] Therefore, defendants claim, since the action at issue involves a covered claim as defined by the Dispute Resolution Policy—that is, a claim involving a legal entitlement arising from the employment relationship—it must be dismissed for lack of subject

---

[9] Other excluded claims include claims for workers' compensation; claims involving patents; claims by employees alleging a violation of a collective bargaining agreement; claims seeking to modify or object to GDC4S's policies or procedures; and claims against GDC4S by a present or former employee that do not have a relationship to the employee's work.

[10] *See, e.g., 3–J Hospitality, LLC v. Big Time Design, Inc.*, 2009 WL 3586830, at *3 (S.D.Fl. Oct. 27, 2009); *Mortimer v. First Mount Vernon Indus. Ass'n*, 2003 WL 23305155, at *3 (D.Md. May 19, 2003); *Ziarno v. Gardner Carton & Douglas, LLP*, 2004 WL 838131, at *3 (E.D.Pa. April 8, 2004).

matter jurisdiction, as plaintiff failed to exhaust the specified dispute resolution procedure before filing an action in federal court. In response, plaintiff claims the breach of contract action is an excluded claim—that is, a claim for benefits under a company benefit plan—and thus she was not required to proceed according to the dispute resolution procedure.

Assuming, without deciding, that plaintiff's claim for relocation reimbursement is covered by the Dispute Resolution Policy, it is clear that requiring plaintiff to pursue the Dispute Resolution Policy in this case is futile, given that defendants have taken the firm position in this litigation that the termination was for cause and hence that plaintiff has forfeited her relocation benefits. Plaintiff is equally firm in her view that she is entitled to her relocation expenses because she was terminated without cause. In effect, therefore, the outcome of any dispute resolution process has already been determined, namely that the parties remain at loggerheads as to whether plaintiff was discharged for cause and is therefore not eligible to receive reimbursement for relocation expenses. It strains credulity to believe the outcome of the Dispute Resolution Policy proceeding would differ if Count IV were dismissed and plaintiff required to pursue the Dispute Resolution Policy. It follows that the Dispute Resolution Policy, in these circumstances, is clearly futile and thus inadequate. *See Seal & Co., Inc. v. A.S. McGaughan Co, Inc.*, 907 F.2d 450, 454 (4th Cir. 1990) (recognizing that "parties are bound to exhaust such [dispute resolution] procedures unless they are inadequate or unavailable").[11] Accordingly, Count IV need not be dismissed for failure to exhaust the Dispute Resolution Policy.

---

[11] Of course, the parties are free to resolve Count IV (and indeed, the ERISA claims, as well) by way of settlement. Discovery in this matter, which is not available in the Dispute Resolution Policy, may well aid the parties in this respect.

An appropriate Order will issue.

Alexandria, Virginia
October 28, 2013

/s/
_____
T. S. Ellis, III
United States District Judge